IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 1:99cr15-MMP/AK

FRANK MEROLD,

              Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 920, Defendant Frank Merold's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The Government has filed its response, Doc. 932, and Defendant has filed a reply. Doc. 934. Both parties have also filed several supplements which address *Blakely* and *Booker*.[1] This cause is therefore now in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

The defendant, Frank Merold, was charged in a three-count superseding indictment with conspiracy to possess with intent to distribute and to distribute cocaine and with using and carrying a firearm during and in relation to a drug trafficking crime. Doc. 92. The superseding

_____

[1]There are numerous other motions pending in this case, but they have not been referred to the undersigned for decision and appear to address matters peculiarly appropriate for the District Judge's consideration. *See* Docs. 895, 933, 939, & 956.

indictment also contained a criminal forfeiture count. *Id.* Also indicted were five other co-defendants. *Id.* The superseding indictment did not allege any drug quantity. *Id.*

On May 12, 1999, the co-defendant, Christopher Reed, pled guilty. Docs. 143 & 144. On May 27, 1999, the co-defendant, Walter Penick, pled guilty to Count I and after a bench trial, was found guilty on Count II. Docs. 180, 182, 202, & 241.

On that same date, the Court held a hearing on all pending motions, including the Government's *Bruton* notice and motion to sever. Doc. 158. As to the severance, the Court found that Terry Glasscock and James Boswell could be tried together, but that Aaron Glasscock and instant defendant Merold must be severed entirely. Doc. 200. The Court denied the motions for a bill of particulars by co-defendants to more fully reveal "the precise quantity of controlled substances that [were] involved in the total conspiracy, as well as the amount attributable to each defendant. *Id.*

The case then proceeded to trial against Boswell and Terry Glasscock only. The jury convicted both defendants on all counts and returned special verdicts that both men had earned money "from [their] illegal drug activity during and in furtherance of the conspiracy set forth in the indictment." Docs. 235 & 237.

Shortly before Merold's trial began, the Government moved in limine to prohibit him from eliciting certain hearsay testimony, Doc. 280, and for a pretrial ruling to allow it to offer the prior testimony of one of the officers who conducted a vehicle search involving Merold. Doc. 286. On August 11, 1999, a jury found Merold, guilty on Count I and not guilty on Count II. Doc. 298. It also entered a special verdict that Merold had earned $8,000,000.00 "from his illegal drug activity during and in furtherance of the conspiracy set forth in the indictment."

Doc. 300.

After three mistrials, Docs. 283, 327, & 376, the co-defendant, Aaron Glasscock, was eventually found guilty on Count I and not guilty on Count II.  Doc. 483.

On October 27, 1999, counsel for Merold moved to withdraw, citing irreconcilable differences that were "to such an extent that [counsel] believes he can no longer effectively represent the defendant in this matter."  Doc. 414.  Counsel later withdrew the motion after he and Merold had conferred and resolved their conflicts to their "mutual satisfaction."  Doc. 421. The Court allowed the motion to be withdrawn and cancelled the scheduled hearing thereon. Doc. 422.

Before sentencing, Merold made numerous objections to the Presentence Report (PSR). Doc. 438.  Included were the following:

(1)     That he was not "going to buy or possess any cocaine that the government agent represented would be forthcoming," but instead, was "merely attempting to 'rip off' the money";

(2)     That any suggestion that he had been "involved in at least 42 drug transactions for a total of 1,085 kilograms of powder cocaine" was "inherently untrustworthy and suspect" as it was based on information provided by a cooperating co-defendant;

(3)     That the PSR improperly placed "Penick below Merold" and characterized Penick "as a mere 'courier/mule' and unjustly assessed Merold with a supervisor role over Reed, Aaron Glasscock, and Penick, as Merold exercised no control over any co-defendant;

(4)     That Merold did not obstruct justice when he (a) failed to advise the probation officer of certain assets, since he "had received a concussion when he was beaten by DEA agents after his arrest," (b) asked his wife to transfer assets to a third party, and (c) testified at Aaron Glasscock's trial;

(5)     That the base offense level should be based on "at least 50 kilograms but less than 150 kilograms" of cocaine, as there was no evidence "that the acts which led to the indictment were greater than 50 kilograms," and that

> Merold should not be assessed with the firearm since he was found not
> guilty on the gun charge and the firearm "was not intended to be and was
> not utilized in the conspiracy count."

Doc. 438. The Government filed a response to the objections. Doc. 439.

Thereafter, Merold personally sent a letter to the Court, complaining, in part, about his attorney's handling of his defense. Doc. 445. On the day of sentencing, counsel made an oral motion to withdraw, which the Court granted based on "a personal, irreconcilable conflict," and sentencing was continued. Doc. 450.

Merold, acting *pro se*, then began filing a flurry of motions. *See*, *e.g*., Docs. 515, 516, 518, 519, 524, 537, & 548. He later submitted a letter requesting appointment of counsel and outlining his indigent status. Doc. 575. On March 28, 2000, the Court held a hearing on all pending motions. Doc. 593. At that time, the Court directed Merold's trial attorney, Robert Rosenblatt, to submit an affidavit "setting out the amount of the fee arrangement reached with Mr. Merold, the manner and timing in which the fees became payable, the amount of fees actually received, the form of the fees received, and the source of the fees paid." Doc. 594. The Court also granted Merold's sealed motion to withdraw his pending *pro se* motions. *Id*.; *see also* Doc. 571.

On April 12, 2000, Lloyd Vipperman entered an appearance as retained counsel for Merold. Doc. 617. Merold later confirmed that he had retained Mr. Vipperman's services. Doc. 691.

In response to the Court's order, Mr. Rosenblatt filed his affidavit. Doc. 620. Of relevance were the following averments:

> Initially as to the source of the funds, Mr. Merold advised that he was never in
> possession of cocaine, and was not guilty of any crimes whatsoever at any time.

Mr. Merold advised that all of his assets were the product of what he called "sweat equity." He stated that he would buy rundown real property, would restore the real property himself and make a legitimate profit. He stated he was in this business for years. He further stated he bought and sold watches and jewelry legitimately and attended various jewelry shows as a vendor.

Later, Mr. Merold was interviewed by the government with the undersigned present. He conceded that he had been involved in the cocaine business for years with other coconspirators. Still later, Mr. Merold elected to proceed to trial. He stated that he did not tell the government the truth when he was interviewed. He stated he told them what they wanted to hear and it was not true that he had been involved in drugs for several years. Finally, according to the presentence report during the trial of Aaron Glasscock, Mr. Merold committed perjury by stating to the jury that he never trafficked in cocaine before March of 1999.

*Id*.

Shortly before sentencing, Merold filed a reply to the Government's response to his objections to the PSR and also raised the issue of *Apprendi*. Merold's objections were these:

(1) That the 1989-1999 time frame for the conspiracy was incorrect as to Merold, who did not meet Penick until 1995;

(2) That it would be double jeopardy to assess an enhancement for a firearm after Merold was found not guilty on the firearms charge; furthermore, the enhancement would violate *Apprendi* and would prejudice Merold "in the eyes of the B.O.P. at the time of...determining security classifications," would exclude him from participation in the drug abuse program in prison, and would expose him to harsher prison conditions;

(3) That the firearm found in the vehicle that Merold was driving was under the passenger seat, not the driver's seat;

(4) That Penick's testimony was "based on assumption, speculation, and hearsay, [and thus,] this unsubstantiated unreliable testimony from a four time convicted felon is not sufficient to base this [42 drug transactions and 1,085 kilograms of cocaine] on"; moreover, "where there is no drug quantity alleged in the indictment nor submitted to the Jury the defendant must be sentenced under a statute without reference to drug quantity," and therefore, all drug quantities in the PSR should be deleted or "changed to read 'undetermined quantity'";

(5) That Defendant was not a supervisor in the drug distribution operation,

and because he was not charged with or found guilty by the jury of a supervisory role in the offense, he should not be enhanced on that basis in light of *Apprendi*;

(6)     That an enhancement for obstruction of justice is improper and unconstitutional;

(7)     That Defendant did not commit perjury at Aaron Glasscock's trial when he testified that he had "'never sold drugs to Aaron Glasscock or anyone else,'" as Defendant "was no more than a middle man in the so alleged conspiracy and owned no drugs to sell";

(8)     That "there are no evidentiary facts or proof to substantiate the quantity of cocaine attributed to the defendant," and he was not charged with or found guilty of any specific quantity of cocaine as required by *Apprendi*; therefore, he must be sentenced based on a  minimum quantity of cocaine.

Doc. 761.

In response, the Government "file[d] a comprehensive response to all of the defendant's objections."  Doc. 763.  The Government conceded that the Court had committed an *Apprendi* error in failing to submit drug quantity to the jury but argued it was harmless error as there was ample evidence at trial to substantiate the drug quantities found in the PSR.  *Id.*  Furthermore, the evidence produced at trial supported the finding that Defendant acted as a supervisor/manager even if all he had done was negotiate the purchase and make the arrangements for the transaction.  *Id.*  The Government also argued that the firearm enhancement was appropriate because one of the guns found in the car belonged to Merold and another was in the actual possession of a co-conspirator.  *Id.*  Finally, the Government argued that the enhancement for obstruction of justice was proper because (1) Defendant's wife had testified in a prior hearing that Defendant had requested that she transfer certain assets to avoid forfeiture, (2) Defendant had not listed any of those assets or others in his financial affidavit, and (3) evidence was adduced at Aaron Glasscock's trial to show that Defendant had trafficked in cocaine before

March, 1999, and that DEA agents did not abuse him.  *Id.*

On August 8, 2001, Defendant appeared for sentencing, and the Court sentenced him to life imprisonment.  Docs. 767 & 771.  Defendant immediately appealed, Doc. 769, and the Court granted him *in forma pauperis* status and appointed new appellate counsel.  Doc. 773.  Acting *pro se*, Defendant then filed a Rule 35 motion based on *Apprendi*.  Doc. 776.  The Court found:

> Defendant's motion does not allege any arithmetical, technical or other clear error; rather, the instant motion is a collateral attack on the legality of his conviction.  The appropriate authority to petition the court for collateral relief from an illegally imposed sentence of the nature Defendant alleges is found in 28 U.S.C. § 2255.  Defendant's motion falls outside the scope of Rule 35(c), and will therefore be denied.
>
> Even if Defendant's motion is accorded liberal construction as a § 2255 motion....the motion must nevertheless be dismissed....Due to the fact that [Defendant's] direct appeal of his conviction and sentence is pending...this court is without jurisdiction to consider any collateral attack of Defendant's sentence....
>
> As a final matter...the court finds this *pro se* filing to be improper....It has long been the practice of the court not to entertain the *pro se* filings of a defendant currently represented by counsel, in the absence of explicit authorization from the court permitting a defendant to proceed *pro se* with counsel.  The only *pro se* filings the court will entertain while a defendant is represented by counsel are those that question the conduct of the defendant's attorney.  Because Defendant's motion does not call into question the conduct of his attorney, Defendant's motion is improperly before the court by reason of its *pro se* status....

Doc. 793.

On August 6, 2002, the Eleventh Circuit issued its opinion affirming Defendant's conviction and sentence.  Doc. 830.  The appellate court outlined the bases of the appeal as follows:

> Merold appeals his conviction and sentence based on the grounds that they violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000).  He also appeals three enhancements for firearms possession, obstruction of justice, and role-in-the-offense, and he appeals the use of hearsay at the forfeiture portion of his trial.

*Id*.

With regard to the *Apprendi* issue, Merold in turn raised three issues:  (1) "that the district court committed reversible error by imposing a life sentence when the indictment did not allege a specific drug quantity and the jury made no finding regarding drug quantity," (2) that *Apprendi* errors are jurisdictional, and (3) that the "government is judicially estopped from arguing that any Apprendi error is harmless."  *Id*.  The Eleventh Circuit noted initially that pursuant to *United States v. Cotton*, 535 U.S. 625 (2002), the failure of an indictment to allege drug quantity does not deprive the court of its right to hear a case, and thus, an *Apprendi* error is not jurisdictional.  *Id*.  It then reviewed whether the *Apprendi* error in this case was harmful, concluding:

> The evidence overwhelmingly establishes that Merold was part of a conspiracy involving at least 50 kilograms of cocaine.  At no time in the course of the conspiracy for which they were arrested did the co-conspirators even discuss a quantity of cocaine less than 50 kilograms.  There was also evidence that Merold had procured 40 to 50 kilograms of cocaine on a number of other occasions.  As the evidence was overwhelming and uncontroverted, any Apprendi error did not affect Merold's substantial rights was thus harmless.

*Id*.  In a footnote, the court found that Defendant's argument that the government was judicially estopped from arguing harmless error was meritless.  *Id*.

The court continued:

> To warrant a base offense level, a defendant must be responsible for 150 or more kilograms of cocaine. Walter Penick testified that Merold had procured 15 to 18 kilograms of cocaine approximately 30 times before lat 1996, and then procured 40 to 50 kilograms every six weeks, with the exception of one three month period. This testimony establishes that Merold was responsible for well over 150 kilograms of cocaine.  It is corroborated by Merold's own admission that he trafficked cocaine on about 20 prior occasions, which would be sufficient to put the quantity at or near 150 kilograms.

*Id*. The court rejected Merold's argument that Penick was "too unreliable a witness to establish drug quantity" and refused to disturb the Court's determination that Penick was credible. *Id*. It noted that even if it assumed that Merold was only accountable for 50 kilograms of cocaine, he would have received the same life sentence "regardless of any possible error in determining the amount of drugs." *Id*.

The Eleventh Circuit also rejected Defendant's *Apprendi* challenges to the enhancements for the firearm, obstruction of justice, and managerial role, finding them "unaffected by Apprendi." *Id*. Moreover, the court found that Merold's acquittal on the firearms count "had no preclusive effect on the guideline application." *Id*. The court further determined that there was "sufficient evidence...to support the [firearms] enhancement," and thus, the court "did not err in imposing it." *Id*.

The appellate court also found support in the record for the Court's imposition of both the enhancement for obstruction of justice and for Defendant's managerial role in the conspiracy. *Id*. In reaching this conclusion, the court stated:

> Merold did not merely neglect to mention assets to the probation officer, he, in fact, provided false information about what real estate he owned, and he instructed his wife to transfer title of several assets in order to avoid forfeiture....
>
> * * *
>
> Merold does not dispute that at least five people were involved in the drug conspiracy. He maintains, however, that the evidence does not support a finding that he acted as a supervisor. The evidence shows that the deal was set up by a co-defendant on Merold's behalf. Merold tested and approved the cocaine sample, made arrangements for the money to be shipped to him to purchase the cocaine at $13,000 per kilogram, and said he was ready to do business when the money arrived. He also had sufficient authority to re-route the two co-defendants who were delivering the $900,000 to purchase the cocaine. These facts defeat Merold's argument.

*Id.*

Merold then filed a number of miscellaneous motions and several appeals, *see*, *e.g.*, Docs. 838, 841, 845, 860, 864, 876, 889, 895, 908, & 914, none of which were successful, and he also sought a writ of certiorari in the United States Supreme Court, which was denied on May 5, 2003. *United States v. Merold*, 123 S.Ct. 1940 (2003). The instant motion to vacate finally ensued. Doc. 920. On this occasion, Merold raises numerous grounds for relief, each of which will be addressed in turn.

## **DISCUSSION**

1. Government "knowingly and willfully corruptly and criminally violated and deprived [Defendant's] Constitutional rights and protections."

In his first claim for relief, Merold maintains that the Government violated his constitutional rights and several criminal statutes "while acting in contempt and violation of precedent law prohibiting their conduct...." Doc. 920 at 5. In his memorandum, which is intermingled with the exhibits, Defendant more specifically states that the presiding judge and the prosecutor, "acting in collusion,"[2] deprived him of his rights during trial and at sentencing "so as to impose an illegal sentence and imprisonment," citing, *inter alia*, *Apprendi* and 18 U.S.C. §§ 241 and 242. Doc. 920, Attach. at 31 of 52.

To the extent that Defendant may be alleging trial counsel was ineffective for not raising *Apprendi*-type error during trial, the claim is without merit. Defendant was tried pre-*Apprendi*, and counsel was not ineffective for failing to anticipate a change in the law, when controlling

---

[2]The only proper parties in this proceeding are the United States of America, which the Court will refer to as "the Government" and Mr. Merold. Neither the presiding district judge nor the prosecutor himself is a proper party in a § 2255 motion.

circuit law clearly stated that drug quantity did not have to be charged in the indictment or submitted to the jury for determination.  Defendant was sentenced post-*Apprendi*, and his *Apprendi* claims were fully litigated at sentencing and on appeal and decided adversely to him. Thus, they cannot be relitigated in this proceeding.  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001).

2.      Government "solicited, bribed and suborned perjury."

In this claim for relief, Defendant maintains that the Government's only witness against him, Walter Penick, was "bribed to produce perjured testimony, thus sabotaging [Defendant's] trial proceedings."  Doc. 920 at 5.  A review of Penick's proceedings and his testimony at Merold's trial is appropriate.

In late May, 1999, Penick signed a Plea and Cooperation Agreement in which he agreed to plead guilty to Count One, while reserving his right to be tried on Count Two, and "to cooperate fully and truthfully...."  Doc. 182.  He also agreed that although the Government would "make known [its] opinion as to the nature and extent of [his] cooperation," his sentence was "left solely to the discretion of the District Court," and the Government would not "recommend a specific sentence...."  *Id*.  Penick further acknowledged that nothing in the Agreement protected him from prosecution for "perjury, false declaration, or false statement" occurring "during the cooperation phase of this agreement," and the Government offered Penick the opportunity to enroll in the Witness Security Program.  *Id*.  The Agreement contained the standard substantial assistance language:

> If, in the sole discretion of the United States Attorney, Walter Penick is deemed to have provided substantial assistance in the investigation or prosecution of other persons...and has otherwise complied with all terms of this agreement...then the United States Attorney will file an appropriate substantial assistance

> motion....[T]he United States Attorney may choose in his absolute discretion to
> file a motion under...section 3553, or under...5K1.1, or under Fed. R. Crim. P. 35,
> or under any or all of those provisions.  Should a motion be filed, the granting of
> relief and the extent of relief is left solely to the discretion of the district court.

*Id*. (emphasis omitted).  The Agreement concluded:  "There are no other agreements between the

United States Attorney...and Walter Penick, and Walter Penick enters this agreement knowingly,

voluntarily and upon advice of counsel."  *Id*. (emphasis omitted).

Penick was subsequently tried by the Court sitting without a jury on Count Two of the

Superseding Indictment.  Doc. 241.  In detailing the drug transaction that resulted in the

prosecution of this case, the Court stated:

> Penick informed the government that Greg Boswell had provided the money to
> buy the cocaine.  Penick stated that he had been couriering money to get cocaine
> for Boswell from Frank Merold since 1994.  Penick stated that since late 1996
> usually Terry Glasscock, and on a number of occasions Aaron Glasscock, had
> been taking the money down with him and returning the cocaine with him to
> Boswell.  Penick stated that he and his earlier fellow couriers as well as he and
> the Glasscocks usually drove down I-75 by Gainesvile, Florida, bought the
> cocaine in South Florida, brought the cocaine back through up I-75 past
> Gainesville, and took it to Kentucky for Boswell.

*Id*.  As previously noted, the Court found Penick guilty on Count Two.

Subsequently, on August 11, 1999, Penick testified on behalf of the Government at

Merold's trial.  Initially, Penick explained that by cooperating with the Government, he was

hoping to get a 5K1 motion, but that he had no guarantee that the Government would file one on

his behalf.  Doc. 804 at 27.  He also acknowledged that only the Court could decide "how much,

if any, [his] sentence gets reduced[.]"  *Id*. at 27-28.  He then testified that starting in 1994, he and

others began going to Hollywood, Florida, to buy cocaine from Merold, "always Frank

Merold[.]"  *Id*. at 36.  Penick further testified that from November, 1994, to the end of 1996, he

traveled to Hollywood, Florida, at least once a month to get between 15 and 18 kilograms of

cocaine from Merold.  *Id*. at 40.  Then, from January, 1997, until March, 1999, approximately "every six weeks or so," Penick traveled to Florida to get cocaine from Merold, securing 40 to 50 kilograms on each trip.  *Id*. at 51.  In late February, 1999, Boswell sent Penick to Hollywood, Florida, "to see Frank and get his phone number," after Merold changed his telephone number. *Id*. at 59-60.  He then described the circumstances of the trip and his interaction with Merold preceding the arrests of the defendants in this case.  *Id*. at 60-65.

On cross-examination, Penick acknowledged that he had met with the prosecutor and the case agent before he testified.  *Id*. at 67-68.  He also recognized that he was facing "at least 360 months in jail" and that the only way he could avoid that sentence was to cooperate and receive credit for substantial assistance.  *Id*. at 70-71.  On redirect, Penick admitted that if he lied about Merold, then the cooperation he had already provided in the trials of the Glasscocks and Boswell would be "out the window," and the Court would not give him a break on his sentence.  *Id*. at 105-06.

Shortly before Penick's sentencing, the Government filed a Certification of Defendant's Substantial Assistance.  Doc. 502.  With regard to Merold, the Government stated that Penick had provided corroborated information, including testimony at trial, that Merold was the supplier to Boswell of more than 1,100 kilograms of cocaine.  *Id*.  While Penick was originally looking at a sentence of 210-262 months imprisonment on Count One and a mandatory 5 years on Count Two, "as a result of [his] substantial assistance," the Court significantly departed downwardly, sentencing Penick to 60 months on both counts, to run concurrently.  Doc. 531.

On this occasion, Merold attaches Penick's affidavit, signed and dated almost five years later, in which Penick, seeking to "undo damages, harm, and injury which has been done to

Frank Merold," states, in pertinent part:

> That [trial] testimony was false and misleading and was produced by me as a
> result of threats, coercion and bribery by the government for the purpose of
> gaining a conviction against Frank Merold and Aaron Glasscock....[A]s prompted
> by the government, I did fabricate extensive facts and scenarios so as to insure
> myself a good deal from the government....

> It did not matter to the government whether the information I provided was true
> or not, it only mattered that I said what they wanted to hear to aid in their
> prosecution...whereby the government...prompted, condoned, and suborned
> fraudulent, false, misleading and unsubstantiated testimony from me which I
> could not possibly have had personal knowledge of, such as drug quantities,
> amounts of money and who was supplying drugs and I did not suspect it was Mr.
> Merold....

> That coercion was in the form of threats that if I did not cooperate with the
> government and do what they wanted, that I would die in prison, and bribery with
> promises of non-prosecution and a short prison sentence, all of which was
> delivered....At the time I had no choice but to cooperate with the government.
> [A]t this time my sentence will soon be completed, the statute of limitations has
> expired and the government can no longer harm me, also I was maneuvered into
> giving that testimony by being told that Frank Merold was going to testify against
> me and that he had set me up to steal the money from me which he was arrested in
> possession of.

> I hereby make known some of the more blatant fabrications told by me during
> trial.

> To begin with I...have never at any time seen Frank Merold in possession of
> drugs, I did falsely imply to the trial jury for the prosecutor that I might have seen
> Mr. Merold, with a grocery bag which I presumed had drugs in it one time, that
> was a fabrication used to imply that I had seen Mr. Merold in possession of drugs
> and was untrue.

> I also stated that I had committed drug deals at the home of Frank Merold, that
> was specifically prompted by the prosecutor for the purpose of seeking forfeiture
> of Mr. Merold's Property.

> I was further prompted to make statements and provide testimony concerning the
> issue of drug quantities and quantities of money, in reference to this all statements
> and testimony was purely unsubstantiated and uncorroborated testimony as I did
> not see or have access to any drugs or money and I never handled any drugs or
> money and neither was I present when any alleged drugs or money were

inventoried handled or distributed.  Therefore it is clear that my testimony concerning such facts was testimony about things which I personally could not have had personal knowledge and was a fabrication used on behalf of the prosecution, and in violation of the rules of evidence....

* * *

During trial I testified under cross-examination by Mr. Merold's lawyer that the prosecutor would before trial prepare my testimony for me this was true and a clear indication of what was happening.  I also when questioned denied that I was guaranteed any deal for my testimony, that was a fraudulent misrepresentation which the prosecutor prompted me to say as it was understood and established that I would receive benefits for my testimony.

Doc. 920, Attach. at 31-33 of 55.  In short, Penick seeks to recant his trial testimony, and thus, in Merold's view, he was convicted on perjured testimony which the Government knew to be false.

A claim that a government witness perjured himself at trial is cognizable under § 2255. *United States v. Cross*, 928 F.2d 1030, 1053 (11th Cir. 1991).  However, it is not highly favored. Indeed, a recantation of trial testimony is "'looked upon with the utmost suspicion,'" *United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir. 1973) (citation omitted),[3] since "the witness either is lying now, was lying then, or lied both times."  *United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992); *see also Wadlington v. United States*, 428 F.3d 779 (8th Cir. 2005) (recanting affidavits and witnesses are viewed with extreme suspicion); *United States v. Thompson*, 114 F.3d 1190 (6th Cir. 1997) (same).  Courts are especially skeptical "where the witness who is recanting has already received a benefit–in the form of...the government's recommendation of a reduced sentence to the trial court in return for testimony given at trial...."  *United States v. Ogle*, 425 F.3d 471, 478 (7th Cir. 2005).

---

[3]While *Johnson* is a Fed. R. Crim. P. 33 case, its discussion of recanted testimony has been oft-cited in the context of § 2255 motions.

Not only did Penick repeatedly testify under oath at several trials regarding Merold's substantial involvement in the drug conspiracy, *see*, *e.g.*, Doc. 932, Ex. G at 12-13, 15-16, 19-20, 24, & 28-32 (testimony at Aaron Glasscock's trial), but he also stood before the Court and acknowledged under oath that his plea agreement required him to cooperate and "that whatever statements you make or whatever testimony you give, that it be absolutely truthful."  Doc. 932, Ex. F at 20.  During his plea colloquy, he also told the Court that he understood that the Government had sole discretion regarding whether to file a substantial assistance motion and that the decision of whether to grant the motion and the extent of any downward departure which might be given were solely within the Court's discretion  *Id*. at 22-24.  Finally, Penick advised the Court (1) that no other promises had been made other than those set forth in the Agreement, (2) that the written Agreement contained "every promise and every understanding" reached with the Government, (3) that there were no secret or undisclosed promises or inducements, (4) that no one had promised him anything contrary or in addition to the written terms of the Agreement, and (5) not no threats, force, pressure, or intimidation of any type had been used to induce his change of plea.  *Id*. at 26-27.

"Solemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*,  431 U.S. 63, 73-74 (1977), and having carefully considered the matter, the Court finds that Penick's eleventh-hour statements offered in support of Merold's motion are not worthy of credence.  Here, Penick, acting under an erroneous belief that the Government can "no longer harm [him]," attempts to recant his trial testimony and lay his allegedly perjurious testimony at the feet of the Government only after he garnered a substantial benefit based on that trial testimony and cooperation.  The presiding judge and several different juries had numerous

opportunities to "view, weigh and analyze firsthand not only [Penick's] composure or lack thereof, but [his] testimony as well," *Olson v. United States*, 989 F.2d 229, 232 (7th Cir. 1993), and obviously, they all found his testimony and statements made in open court and under oath to be credible and believable.  Otherwise, it is highly improbable that the Court would have agreed with the Government's estimation of Penick's assistance and cut his Guidelines sentence by over two-thirds or that either it or the probation officer would have used his testimony in any manner to calculate the drug quantities attributable to Merold.  At sentencing, the Court rejected Defendant's objection to the drug quantities assigned to him and his argument regarding Penick's credibility, finding that "based upon the testimony and other matters presented, that the presentence report is completely true and accurate."  Doc. 799 at 30.  Indeed, the Eleventh Circuit refused to disturb the Court's credibility determination regarding Penick's testimony and found other corroborating testimony in the record regarding drug quantities sufficient to support the life sentence.  *See* Doc. 830.  Furthermore, Penick repeatedly denied that the Government had acted improperly in securing his cooperation or that it had promised him the downward departure, and his allegations to the contrary now are disingenuous.

Finally, even if the Court were to accept the recantation as credible and find that the Government knew that it was suborning perjury through coercion, Merold is not entitled to relief.  There was more than sufficient evidence that Merold was guilty of the charged conspiracy, and as the Eleventh Circuit found, even without Penick's testimony, there was sufficient evidence to support the imposition of the life sentence.  *See United States v. Vallejo*, 297 F.3d 1154 (11th Cir. 2002) (even if prosecutor knowingly used perjured testimony, defendant was not entitled to relief unless false testimony was material).  In fact, after he was arrested and

given the *Miranda* warnings, Merold himself admitted to the quantities necessary to receive the life sentence.  *See*, *e.g*., Doc. 802 at 210-12 & 272-78; Doc. 803 at 17-18; & Doc. 804 at 111-19 & 140-50).

    3.    Government "constructively amended...indictment at sentencing and acted in absence of jurisdiction."

    In this claim, Defendant charges that the Government illegally sentenced and imprisoned him "for an offense [it] knew, and instructed the jury that [Defendant] was not charged of in an indictment, and not on trial for, an offense [he] was not charged of, tried for, found guilty or convicted of, and which he is innocent of."  Doc. 920 at 5.  According to Defendant, he was charged only with a conspiracy, not with "any § 841, drug quantity possession offense."  Doc. 920, Attach. at 35 of 55.  Furthermore, he was not charged with "violating any commerce law, or that his conduct affected commerce [or] that he has committed some offense within the special territorial maritime jurisdiction of the United States...."  *Id*.  In Defendant's view, the Court therefore acted without jurisdiction.  *Id*.

    This Court has original jurisdiction of "all offenses against the laws of the United States." 18 U.S.C. § 3231.  "[I]llegal possession and sale of drugs affects interstate commerce, and Congress accordingly has authority under the Commerce Clause to criminalize and punish drug-related activity."  *United States v. Jackson*, 111 F.3d 101, 102 (11th Cir. 1997).  This constitutional authority includes Congress' right to make it a crime to "conspire or agree with someone else to do something which, if actually carried out, would be a violation of" 21 U.S.C. § 841.  Offense Instructions 87, *Eleventh Circuit Pattern Jury Instructions–Criminal* (2003).

    In establishing a § 846 conspiracy, the Government must prove and the jury must necessarily find the object of the conspiracy, which, in this case, was to "possess with the intent

to distribute and to distribute cocaine," in violation of § 841(a). Thus, despite Defendant's belief to the contrary, he was not tried or convicted of an underlying drug offense but was tried and convicted of the offense charged in the Superseding Indictment, conspiracy to commit a drug offense.

> 4.     Defendant "was illegally interrogated for 10 hours in the office of the D.E.A. and denied counsel, thus coerced to make false incriminating statements."

The issue of the voluntariness of statements made by Merold following his arrest was not raised either before or during trial or on direct appeal. A motion to suppress must be raised before trial, or the issue is deemed waived. Fed. R. Crim. P. 12(b)(3)(C). Thus, the issue as presented by Defendant is not open for consideration on this motion to vacate, as a motion to vacate does not generally operate to review matters which could have and should have, if arguably meritorious, been raised before the trial court. Though not expressly stated as an ineffective assistance of counsel claim, the Court will, out of an abundance of caution, consider it in that light. *See*, *e.g.*, Doc. 920 at 6 ("All Grounds previously stated were not mentioned due to ineffective assistance of Cousnel..."). With that said, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's]

inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id.*

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id.* Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

Even if the Court accepts as true that counsel acted deficiently in not seeking the suppression of the statements Merold made to law enforcement officers, he cannot establish the prejudice prong of *Strickland*. There was more than sufficient other evidence to link Merold directly to the conspiracy–he was, *e.g.*, taped on several occasions negotiating the cocaine deal which underlay the sting in this case, inspecting the sample kilogram of cocaine, and discussing the money-drug exchange–and to tie him to significant drug quantities, and thus, there is not a reasonable probability that the outcome of the trial or sentencing would have been different if the

statements had been excluded.

      5.      Government engaged in prosecutorial misconduct "in the form of fraud and perjury and deceitful misleading of the trial jury."

This claim is vague and generalized and therefore will not be entertained further by the Court. While the Court has reviewed Defendant's supporting memorandum and exhibits, it has no duty to scour the documents to "fill in the blanks."

      6.      Government "acted in absence of standing as required under all cases and controversies in invoking the [Article III] jurisdiction of the federal Courts."

In this claim, Defendant apparently argues that the United States lacked standing to prosecute him. Defendant was accused of violating the criminal laws of the United States, the United States Attorney is charged with prosecuting alleged violators, and nothing more need be added. This ground is patently frivolous.

      7.      Defense counsel rendered ineffective assistance by "corruptly and deceitfully" inducing Defendant "to enter a plea in an Article I...Court."

The only "pleas" that Defendant ever entered in this case were "not guilty" pleas before the magistrate judge, who is an Article I judge. Acceptance of a not guilty plea at arraignment is a duty specifically referred to magistrate judges in this Court. N.D. Fla. Loc. R. 72.2(F)(10). To the extent that Defendant is charging that the district judge who presided over this case is an Article I judge, not an Article III judge, he is completely mistaken.

      8.      Government "corruptly deprived" Defendant of his right to call witnesses "through the corrupt use of a motion in Limine."

In this ground, Defendant claims that the Government improperly prevented him from calling Christopher Reed as a witness. Doc. 920 at 6. According to Defendant, Reed "would not only have provided abundant exculpatory evidence but also revealed [Defendant's] intention

which was not the alleged conspiracy.  Thus providing an alibi."  *Id.*

The Government never sought to prevent Reed from testifying.  It did, however, seek to prevent Merold from calling witnesses whose testimony would have been hearsay or double hearsay regarding statements allegedly made by Reed.  Doc. 280.  Indeed, Defendant was always free to call Reed himself as a witness, though it is highly unlikely that his testimony would have been even the least bit helpful to Merold.  *See id.* (according to his attorney, Reed would testify if called by either party); Doc. 503 (Government's certification of Reed's substantial assistance primarily as to information inculpating Merold).

9.      Government used "inadmissible unsealed, tampered with, edited and altered tape recordings...which were missing all segments of exculpatory evidence."

The issue of the admissibility of the tape recordings was not raised either before or during trial or on direct appeal.  A motion to suppress must be raised before trial, or the issue is deemed waived.  Fed. R. Crim. P. 12(b)(3)(C).  Thus, the issue as presented by Defendant is not open for consideration on this motion to vacate, as a motion to vacate does not generally operate to review matters which could have and should have, if arguably meritorious, been raised before the trial court.  Furthermore, having carefully reviewed the trial transcript, the Court does not find any evidence to support Defendant's contention that the DEA agent admitted to altering the tapes so as to delete allegedly exculpatory statements.  While there were instances in which the Government did not play the entire tape for the jury, each tape was in evidence and available for use by the defense or consideration by the jury.

10.     Government violated Defendant's constitutional rights during trial and at sentencing "by concealing...material facts from the...jury" and by depriving him of his rights under *Apprendi*.

This ground is vague, and to the extent that it asserts an *Apprendi* claim, the

Eleventh Circuit has rejected the arguments. Further consideration is not required under those circumstances.

11. Government committed fraud and perjury in Defendant's judgment and before the jury.

This is essentially a repetition of Defendant's claim in Ground 3 and it does not bear further discussion.

12. Essential elements for a drug conspiracy were not present, as Defendant "was arrested before any agreement could be reached."

In this claim, Defendant maintains that "there was no agreement made or reached between [Defendant] and Agent Andrews to commit the illegal act, (Drug transaction), required to constitute the alleged conspiracy." Doc. 920 at 8. In other words, according to Defendant, the evidence was insufficient to support the conspiracy conviction.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court held:

[A]n essential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof–defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

*Id*. at 316. In this situation, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *id*. at 319, or phrased slightly differently, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id*. at 320.

This claim is entirely without merit. The evidence was more than sufficient to prove beyond a reasonable doubt that long before Defendant was arrested, he and others "in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan" to

violate the drug laws as charged in the Superseding Indictment.

13.     Indictment was defective.

This yet another attempt to reargue the claim set forth in Ground 3.  Further discussion is not mandated.

14.     Defendant's sentence was improperly enhanced for the firearm offense.

In this ground for relief, Defendant argues, as he previously did to this Court at sentencing, and to the Eleventh Circuit, that his sentence should not have been enhanced for the firearm after he was acquitted on Count Two.  This issue has been fully litigated and decided and bears no additional comment.

15.     Forfeiture proceedings violated due process.

In this claim, Defendant maintains that assets and property were seized "through a mockery of, or under false pretense of lawful civil proceedings for an offense [he] was not charged or tried for, or found guilty or convicted of."  Doc. 920 at 9.  Apparently, Defendant believes that because he was not charged with or convicted of a § 841 violation, his assets cannot be forfeited.  *Id*.  He also repeats his arguments that the Government lacked standing and this Court was without jurisdiction.  *Id*.  The Eleventh Circuit affirmed the forfeiture, Doc. 830, and Defendant does not now point the Court to any particular aspect of the proceeding which violated due process.  His standing and jurisdiction arguments have been considered and rejected *supra*.

16.     Government "knowingly and willfully imposed illegal sentence in violation of established laws of the United States."

Defendant does not elaborate on this claim beyond that quoted, and thus, it is vague and merits no further attention.

17.     Defendant's base offense level was improperly calculated.

This claim is a repetition of others previously made, and the Court notes again that the

Court's calculation of Defendant's sentence was upheld on appeal, and the sentencing issues

cannot be relitigated in this proceeding.

18.     Trial proceedings were "structurally defective...due to fraud," as Defendant was
        not charged with a substantive drug offense.

This ground for relief repeats the claim made in Ground 3 and bears no further

discussion.

19.     Government "misrepresented and misapplied" the harmless error doctrine.

In this claim, Defendant charges that the Government is a master of "legal deception and

fraud" and that it "perjuriously and fraudulently misrepresented and misapplied the Harmless

error doctrine...."  Doc. 920 at 11.  The Eleventh Circuit fully considered whether harmless error

could be applied to Defendant's sentence, and thus, the issue cannot be relitigated on this

occasion.

20.     Government "corruptly and fraudulently misapplied the Preponderance of the
        evidence doctrine."

This claim is merely a rephrasing of claims previously presented, and additional

consideration is not necessary.

21.     Government "acted in total lack of jurisdiction."

This claim is identical to the one raised in Ground 3 and will not be addressed again.

22.     Presiding district judge "breached his oath of office."

In this claim, Defendant charges that the presiding judge breached his oath of office by

"knowingly willfully and corruptly violating and depriving [Defenant's] constitutional rights and

violating law of the United States, while also depriving [Defendant] of equal protection under the law." This claim is vague and patently frivolous.

>    23.    Government counsel committed fraud before the grand jury and district judge acted "as an accomplice to that fraud and obstruction of justice."

This appears to be essentially the same claim presented in Ground 3, the only difference being that the alleged fraud was also committed upon the grand jury. This slight change does not affect the previous discussion or call for a different conclusion as that reached *supra*.

>    24.    Defendant was prosecuted for a § 841 offense "which is not an offense enforceable by the federal government" because it was not enacted as law.

First, Defendant was not prosecuted under § 841. Second, a challenge to the Superseding Indictment should have been made before trial. Third, the claim is patently frivolous. *See* 21 U.S.C. § 841 historical and statutory notes.

Finally, with regard to the *Blakely/Booker* supplements, relief is not available to Defendant. Following its decision in *Blakely v. Washington*, which involved the constitutionality of state sentencing guidelines, the United States Supreme Court determined that *Blakely* applies to the Federal Sentencing Guidelines as well. *United States v. Booker*, ____ U.S. ____, 124 S.Ct. 2519, 159 L.Ed. 2d 442 (2004). However, the Eleventh Circuit has determined that *Booker* is not retroactively applicable to cases on collateral review, as "*Booker*'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005).

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to vacate,

set aside, or correct sentence, Doc. 920, be **DENIED**.

   **IN CHAMBERS** at Gainesville, Florida, this **_15th_** day of May, 2007.


                                    *s/ A. KORNBLUM*
                                    **ALLAN KORNBLUM**
                                    **UNITED STATES MAGISTRATE JUDGE**



                         <u>**NOTICE TO THE PARTIES**</u>

   **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**